## IN THE COURT OF APPEALS OF IOWA

No. 19-0350
Filed June 5, 2019

**IN THE INTEREST OF A.M., B.M., and K.L.,**
**Minor Children,**

**J.L., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Warren County, Kevin Parker, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Zachary C. Priebe of Jeff Carter Law Offices, PC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Yvonne C. Naanep, Des Moines, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

A mother appeals the termination of her parental rights to three children: K.L., born in February 2014; B.M., born in June 2015, and A.M., born in July 2016.[1] The mother contends there is not clear and convincing evidence to support the grounds for termination, termination is not in the children's best interests, the court erred in not applying one of the factors weighing against termination, and the State failed to make reasonable visitation efforts. We affirm because grounds for termination exist, termination and permanency for the children is in their best interests, no factor weighs against termination of the mother's parental rights, and the Iowa Department of Human Services (DHS) made reasonable efforts to accommodate the mother's move.

**I. Background Facts and Proceedings.**

This family has been involved with DHS since July 2016. DHS completed a child-protective-services (CPS) assessment after it was alleged that on July 12, Jacob[2] returned to the family home intoxicated, kicked in the door of the home, and physically assaulted the mother by striking her in the back of the head while two-year-old K.L. was in the mother's arms.[3] One-year-old B.M. was also present in the room. Police were called and Jacob was charged with domestic abuse assault. A protective order prevented Jacob from having contact with the mother. The family agreed to voluntary DHS services.

---

[1] Parental rights were also terminated with respect to Jacob, the putative father of K.L. and biological father of A.M. and B.M. Neither Jacob nor any other father appealed.
[2] At the time, Jacob was believed to be the biological father of both K.L. and B.M. In 2018, paternity testing indicated Jacob is not the biological father of K.L.
[3] The mother was pregnant with A.M. at the time.

In September 2016, another CPS assessment was initiated because K.L. was found outside unattended. When law enforcement arrived at the mother's residence, Jacob was outside looking for K.L.; B.M. had been left unattended in a crib in the residence. The mother was in the hospital for a medical procedure, and A.M. was staying with the maternal grandmother. K.L. and B.M. both had soiled diapers, there was tobacco and rolling papers within reach of K.L., and a free-standing fan was on without a protective cover over the blades. K.L. had his hand almost in the blades before Jacob was able to redirect him. Jacob was placed under arrest for violating the no-contact order, which prohibited him from residing or being in the immediate vicinity of the mother's residence.

During the assessment, the investigator also learned of an August 20, 2016 incident reported to police: Jacob was intoxicated and took K.L. to a neighbor's, leaving B.M. and one-month-old A.M. alone in the mother's residence. When neighbors went to check on the children at the request of the mother (via telephone), Jacob physically assaulted one of the neighbors. Jacob's mother, Linda, was called and agreed to stay and care for the three children. Jacob was not arrested at that time. The mother did not report the incident to DHS. The CPC assessment found both the mother and Jacob had denied the children critical care.[4]

The mother and Jacob consented to the removal of the children on September 19, and the three children were placed in Linda's care.

---

[4] The mother has other children who were no longer in her care. The record shows the mother has founded CPC assessments for denial of critical care involving her other children dated in 2008, 2009, and 2011.

On November 9, the children were adjudicated children in need of assistance (CINA).

On November 17, Jacob was screened for chemical dependency and found to have an alcohol-use disorder. Outpatient treatment was recommended.

A family team meeting was held on November 22, which identified a number of concerns: the mother was to engage with a domestic-violence advocate to address domestic-abuse and mental-health issues. Jacob was court-ordered to attend a domestic-abuse program (IDAP). He was also to engage in substance-abuse and mental-health treatment. Both parents were to participate in parenting education. The no-contact order had been lifted. The parents were living together and were attending couple's counseling with a pastor. Both parents were working. Neither had a driver's license or consistent access to a phone.

A November 27 report to the court indicated Jacob had started outpatient treatment at the House of Mercy, had a probation officer, and was wearing an alcohol monitoring (SCRAM) device.

On December 7, 2016, the juvenile court entered a dispositional order continuing out-of-home placement for the children. The court noted, "Parents need to continue their substance abuse treatment and Jacob needs to continue domestic abuse classes and follow recommendations of probation. The parents need to show that they can provide a safe living environment for the children."

An April 2017 report to the court prepared for the May CINA review hearing noted the "family is fully engaged in offered services," specifically listing both parents enrolled in Parents As Teachers and Family Safety, Risk, and

Permanency (FSRP) services, the mother was engaged in mental-health counseling, and Jacob was participating in substance-abuse treatment and IDAP classes. The report also noted the "[p]arents utilize any and every opportunity they can to see their children" and had progressed to semi-supervised visits. The court continued out-of-home placement.

The father completed substance-abuse treatment. Both parents were employed and were seeing their children as often as possible. They remained engaged in services.

On September 13, 2017, a permanency order was entered and the children were returned to the care of the mother and Jacob. But, several weeks later, a motion to modify the dispositional order was filed because the children had yet to move in with the parents. At the time of the dispositional order, the parents had been in the process of readying a new apartment for the family to live in. In December, the children remained in Linda's home with the parents visiting them there, and DHS learned that another family had moved in with the mother and Jacob.

On January 4, 2018, the court returned care of the children to Linda. Because the family that moved in with the parents had a history of methamphetamine use and the adults were violating their own no-contact order, the court ordered the mother and Jacob to undergo drug screening. The drug screens were negative.

In a January 17, 2018 review order, the court noted that Jacob had a pending charge of domestic assault with a dangerous weapon following an incident in which he hit the mother with a vehicle and admitted he had been

drinking. The children remained in Linda's care. The court ordered paternity testing for the mother, Jacob, and the children.

On April 6, the mother filed a motion for reasonable efforts, objecting to the current visitation schedule of one supervised visit per week. Also on April 6, DHS reported to the court that the mother and Jacob "have continued to remain open to services but have not ensured that the courts or DHS has access to that information. DHS has requested information regarding their progress but has yet to receive reports from these providers." The report also noted the mother and Jacob "continue to rely on others in ensuring safety, progress, and follow through for the children to remain safe with reunification." The report also stated:

> Jacob is currently working for a landscaping company and is reportedly not living in the home, but staying with different friends due to the no contact order. Jacob currently does not have a license, and he either walks or relies on friends and family for rides. At this time, Jacob has not had stable housing to progress towards overnight visitation at his home. Jacob's financial stress is unknown at this time, but there is concerns that he will continue to struggle with finding stable housing and continuing to address ongoing legal issues.
> [The mother] is currently living in the home. [She] is unemployed and does not have a license, and she relies on others to provide transportation. Financial stress continues to be an issue for the family. The no contact order places additional financial stress on the family. [The mother] reports her family is helping her pay some bills, but without income, [she] will continue to struggle with budgeting. There is a potential for increased fines for ongoing legal issues which will also compound financial issues.

DHS recommended returning the children to the mother "if she is able to effectively complete overnight visits" with the three children.

On April 25, a CINA review order continued out-of-home placement but indicated the mother would begin overnight visits. The court found reasonable efforts were being made.

On July 18, a review order returned the custody of the children to the parents under the supervision of DHS. The mother and Jacob were to continue to participate in relationship and family therapy and follow any recommendations. The parents were also to continue to participate in FSRP services.

Unfortunately, on July 31, the police were called due to an argument at the family's residence. Jacob was intoxicated and had broken the glass on the door in an effort to enter the home. The mother asked Linda to come and get the children, and DHS entered a safety plan whereby the children would remain with Linda until the new glass was installed. Jacob was not to be present at the residence and was to participate in substance-abuse treatment and mental-health counseling. Two weeks later, the children remained with Linda, the mother had not visited with the children, and no arrangements for the children's return had occurred. Consequently, on August 15, the court placed the children in Linda's care under the supervision of DHS.

The parents were evicted from their residence on August 21.

A petition to terminate parental rights was filed on September 21. On September 26, the mother filed a motion for reasonable efforts, claiming she had not been allowed to see the children "[s]ince the first day of school."

On November 2, 2018, a hearing on the motion for reasonable efforts and the termination petition was held.[5] The mother had moved in with her father, stepmother, and their two children, which was more than one hour's drive from where the children were placed with Linda. The mother objected to the lack of

---

[5] An exhibit was filed establishing Jacob was not K.L.'s biological father, and the court ordered publication notice to any putative father concerning termination of paternal rights to K.L.

visits provided to her in her new location after her move.[6] DHS suggested the mother attend visits at a halfway point to lessen the amount of time the children were in a car. The mother declined, as she had no transportation of her own. The FSRP provider testified she attempted to provide the mother with visitation in her new community, but B.M. vomited repeatedly during the drive. The location of visits was then returned to children's community on the same day the mother was attending her weekly counseling session. The mother was receiving one visit per week for one hour. The court determined reasonable efforts had been made by DHS.

With respect to the petition to terminate parental rights, the court heard testimony from Linda; DHS social worker, Steven Vosten; FSRP worker, Kim Albritton; the mother; Jacob; and therapist and addictions counselor, Sharaine Conner. The mother testified she was no longer in a relationship with Jacob, though she was pregnant with his child and due in March 2019. She stated they were in counseling and working on how to co-parent the new child. She was unsure what their personal relationship would be. The mother sought the immediate return of her children though she acknowledged she did not have housing, transportation, or employment. In the alternative, the mother asked that a guardianship for the children be established with Linda.

Linda testified she would do whatever was best for the children. Linda testified she was willing and able to provide a permanent home for all three children and adopt them. Linda was asked, "Do you have an opinion of whether

---

[6] DHS did not approve visits in the maternal grandfather's home due to previous DHS dealings. The community offered very few public spaces appropriate for supervised visits.

that is in the best interest of these children to continue this process?" Linda responded:

> I do have an opinion. I don't feel it is. I feel like things just need to be settled. The kids need to be settled. Everybody needs to be settled. We all do.
> We all need to know what the final outcome is. We can have that final outcome and then just move on from there. Being up in the air I don't feel is good for anyone, any of us, especially the children.

The guardian ad litem recommended termination of parental rights.

The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2018) (as to K.L.) and (h) (as to A.M. and B.M).[7] The court found,

> The parties were separated at the time of the hearing. Their relationship has been in turmoil for a number of years. Substance abuse and violence has been causing problems in the parties' relationship and has contributed to their lack of solid parenting.
> Mother is suffering with mental health issues and [Jacob] is fighting addiction (alcohol) and violence (domestic abuse) issues.
> [The mother] is not in a position to take custody of the child[ren]. Delaying permanency is not in the child[ren]'s best interests. Additional time would not cure the parties' inadequacies.

The juvenile court also found termination is in the children's best interests and no circumstance mitigated against termination under Iowa Code section 232.116(3).

The mother appeals.

## II. Scope of review.

We review de novo the termination of parental rights. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of

---

[7] The termination order also cites to section 232.116(1)(*l*) (relating to long-standing substance abuse), which is not relevant to the mother, and we do not address that section.

the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016); *see also In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (noting there is clear and convincing evidence if "there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence" (citation omitted)).

**III. Discussion.**

The mother challenges the finding that the children cannot be returned to her at the present and asserts establishing a guardianship would be in the children's best interests and is the preferred alternative to termination of her parental rights. She also contends DHS failed to comply with its mandate to make reasonable efforts to reunify the family.

The paramount concern in termination proceedings is the best interest of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

*A. Grounds for termination exist.* Iowa Code section 232.116(1)(f) and (h) allow the court to terminate parental rights if a child of a certain age,[8] has been adjudicated CINA, has been out of the parent's custody for the requisite statutory period, and "[t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." The mother contests only the last element.

On our de novo review, we find clear and convincing evidence the children cannot be returned to the mother at the present without the continuing risk of denial of critical care. The mother and her children have been involved with DHS

---

[8] Paragraph (f) governs if a child four years of age or older, and paragraph (h) is for a child three years of age or younger.

and juvenile court proceedings for more than eighteen months. The children have been out of their mother's care for nineteen of the last twenty-four months. Though she was attending counseling, she was not addressing her personal issues; rather, she and Jacob were involved in relationship counseling. At the time of the termination proceeding, the mother was unemployed, without an adequate home for the children, and without transportation. Grounds for termination exist.

*B. Best interests and guardianship.* The mother asserts establishing a guardianship would be in the children's best interests and is to be preferred over terminating her parental rights. She also contends that the children being in Linda's care weighs against termination. *See* Iowa Code section 232.116(3)(a). We address these claims together.

"[G]uardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). We are primarily concerned with the children's safety and need for a permanent home. *See A.B.*, 815 N.W.2d at 776. A child in a guardianship remains in flux because the parents can eventually petition for its closing. *See, e.g.*, Iowa Code §§ 232.104, 633.675. A guardianship is not permanent, and the children would not experience the certainty of adoption. We find termination is in the children's best interests.

*C. Reasonable efforts.* The mother asserts DHS did not make reasonable efforts to provide her with visitation after the children were removed in August 2018. The mother had moved into a home DHS would not approve for visits. However, the record shows DHS attempted to accommodate visitation after the mother's move. DHS offered gas cards for the mother to travel to the children.

The mother did not provide timely confirmation of proposed visits. The mother declined visits at a halfway point. She requested visits to be more than one hour from the children's community, and one child was physically ill during and after the long commute. In this case, DHS performed its role of providing services. *See In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000) (noting that in considering the sufficiency of evidence to support termination, "our focus is on the services provided by the state and the response by [the parent]"). As was the case in *C.B.*, "the failure of the DHS to provide visitation in the last months before the termination hearing did not impact the outcome of the case." 611 N.W.2d at 495.

We affirm the termination of the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h).

**AFFIRMED.**